Before you begin, these are two more of the appellate defenders and appellate prosecutors, Mr. Pilsner and Mr. Austell, who work in the same office with the two young women that were just in the first case. So with that, please go ahead. Oh, Mr. Pilsner is from the First District, excuse me. May it please the Court. Counsel. Good morning, still for another 15 minutes. My name is Jonathan Pilsner from the Office of the State Appellate Defender, and I represent Mr. Parker in this matter. Mr. Parker has raised three separate issues before this Court, all of which seek different grounds for relief, and there's actually two different grounds for relief on Issue 1. I'm going to focus my argument today on Issues 1 and 2. The third issue, a crankled issue, I maintain is fully fleshed out in the briefs. It doesn't need to be addressed here further unless the Court has specific questions. Mr. Parker maintains that no matter what the outcome of Issue 1 and 2 is, this does need to be remanded for a preliminary critical hearing back in the trial court. That said, I'd like to turn to the two larger issues in this case. First, the affidavit for the search warrant, which led police to the gun that the State convicted Mr. Parker of possessing. And secondly, the fact that, in Mr. Parker's opinion, the State did not present sufficient evidence to prove constructive possession of that gun that police recovered from the apartment. But first we'll talk about the search warrant and the affidavit itself. There are two problems with this warrant. The first one is with the affidavit. The second one is with the affidavit himself. I'll begin with the affidavit and just the four corners of it. Mr. Parker maintains that the affidavit did not establish a sufficient nexus between the robbery and himself that police were investigating when Detective Bouchon sought it out. And for this argument, I am focused just on the four corners of the affidavit itself. Police searched two residences looking for the proceeds of the robbery, the things that were stolen from his Springer Shaper, the robbery that Mr. Parker was alleged to have committed. There were two different addresses, though, that police were able to track down that they believe in some way connected to him. One in Rock Island, one in Boleen. The affidavit clearly establishes that there was plenty of probable cause to believe that proceeds from that robbery would be in Rock Island, mostly because police recovered proceeds before the search warrant. One of the other officers, as was clear in the affidavit, when investigating this case, went to – met with Joshua Lewis, a gentleman that had been flagged by a pawn shop. The officer talked to Mr. Lewis. Mr. Lewis came out with one of the watches that was clearly stolen from the Shaper. That was what tied the robbery to the Rock Island address. That was established in Paragraph 9 of the affidavit. In Paragraph 10 of the affidavit, we discussed the Rock Island address a little bit more. And for the first time ever in the entirety of this affidavit, in the entirety of this investigation, did the Boleen address all of a sudden appear. Police had two different records that they believed Mr. Parker may have been residing in. One of them was the Rock Island address. To tie him back to that, police had, of course, the proceeds that they recovered from Mr. Joshua Lewis. They had the fact that they had determined that Mr. Parker's aunt lived at the Rock Island address. And they also had checked something which I'm unfamiliar with. I apologize. It was a pistol records management database, which I'm presuming is some sort of police database. And that also had Mr. Parker's address at that Rock Island address. The only thing, though, that was tying Mr. Parker to the Boleen address was a utility service. Can I go back to Joshua Lewis? Yes. Joshua Lewis is flagged with townshot, apparently trying to pawn a watch that was allegedly the victim's watch. Yes, in the separate case. So what did Joshua Lewis say to police officers to direct their interest in the Rock Island address? Joshua Lewis, I don't think, said anything according to the affidavit. The only thing that Joshua Lewis told the officers is that he had bought this watch from some unknown man at a car wash up the street, I believe. He didn't discuss it being in the address or anything like that. When the officer asked Joshua Lewis, you know, do you still have this watch? Joshua Lewis said yes, went into the Rock Island address, retrieved the watch, and brought it out to the officer and gave it to the officer. So the officer then got these robbery proceeds from Joshua Lewis, who got them from the Rock Island address. Joshua Lewis never... So the watch was somehow returned to a Rock Island address, whereupon he went into the address and brought out the watch. Yes, it was only tied to that address after Joshua Lewis went into the address, got the watch, and brought it out. And then the officer was able to determine that this was, I believe it was a Johnny Dang watch, which I've never heard of before, but that's the watch that was tied to that. Well, be that as it may, your argument's about this address and Rock Island first, right? Well, the argument is that the warrants, the affidavit for the search, had probable cause to search the Rock Island address. There's no argument to that. Okay, great. There was sufficient nexus between the robbery and Mr. Parker for police to search that address. It's interesting that Detective Bouchon used the exact same affidavit to get the search warrant for the Rock Island address and the Molina address. There were no material differences between what he averred to other than the targets of the search. The Molina address, the one that Mr. Parker contends there was no connection to, at least not a sufficient nexus to establish probable cause, was the fact that there were only these two nebulous records, one from U.S. probation, which is problematic, we'll talk about for a second, but assuming for this argument that that was accurate. And then the fact that utility service for the power company was in Mr. Parker's name at that address. So in the face of that conflicting information. There was nothing in the affidavit about the landlord. There was nothing in the affidavit about the landlord, no. The only two things that were pointing at the Molina address were the probation record and the utility company. And Mr. Parker contends that that's not enough to create the sufficient nexus, particularly that there would be robbery proceeds at that Molina address, considering the police have already recovered proceeds from the Rock Island address. And remember, the watch was recovered by officers before Detective Bouchon went to go get the warrant. That was part of the preliminary investigation. So that was the extra tie to Rock Island that tipped the probable cause scale beyond where it needed to be for the Rock Island address. The Molina address doesn't have that. So that said, there was not a sufficient nexus to tie it in the search. The warrant did not establish probable cause. The second problem with this search warrant turns out to be the Molina address. My apologies for not being clear on that. The second problem emerged at trial. And this problem was with the affidavit, Detective Bouchon. At trial, Detective Bouchon, now remember, just to step back the frames properly, in the affidavit there were two things that were pointing police to the Molina address. The fact that probation said he was at this address and that the power company said that he was at the exact same address. At trial, Detective Bouchon was testifying and testified that that isn't actually how the investigation unfolded. Originally, the probation department told him that he was one house, that he was one street over. I believe probation told him that they had Mr. Parker's, that he had his residence at 16th Street, not 15th Street. In the affidavit though, after that, Detective Bouchon testified that he asked dispatch if that was a valid address. Dispatch told him it wasn't. And it's presumed that he then simply found that that must have been a mistake somewhere along the way. The problem with that is that none of what he testified to at trial was in the affidavit that he swore to, to establish probable cause for this search. And that's a glaring mistake. And counsel at trial missed it. Counsel, when this emerged, the facts and the game changed. And although this emerged at trial, counsel dropped the ball by not stopping and saying, wait a second, I now have enough to move for a Franks hearing, to move to challenge this warrant. And that was counsel's failing. That, Parker contends, was ineffective assistance of counsel. There are obviously two prongs to that, the prejudice and the unreasonable performance. I'll address both very briefly. As far as the unreasonable performance prong is concerned, let me step back. I'm going to address prejudice very quickly. Prejudice, if counsel had been successful in knocking out the search, obviously the piece of contraband that Mr. Parker was alleged to have possessed or was convicted of possessing would have been knocked out and the state would have had nothing to proceed on. So counsel's failing was absolutely prejudicial in this case. What's left, though, is whether or not counsel's performance was unreasonable. Just to back up a second. Of course. The contraband that was found at the Moline apartment was not anything to do with the robbery. No. This was a gun that was unrelated to anything. Absolutely correct. The gun was unrelated to everything. The robbery, and we're going to feel in this record, although the other record, Mr. Parker's other case is up here, that robbery, there was no allegation of any weapon other than a box cutter or some sort of small knife. There was no allegation of a firearm. And there were no proceeds of the robbery found at the Moline address. There were some proceeds or were some evidence of that robbery found at the Rock Island address. But turning back to the unreasonable performance for counsel, the very best defense for Mr. Parker would be to attack the search, because if you attack the search and it was an unconstitutional search for whatever reason, it would have, as I stated before, knocked out the gun from the state. It would have eliminated the state's ability to use the gun as evidence, and without a gun in evidence, they obviously cannot prove their case beyond a possible doubt. What crime is it that we're going to on this Moline residence search? They were looking for evidence of the robbery. They stumbled across the weapon, and Mr. Parker, being a convicted felon, obviously cannot possess the firearm. So you want to knock that charge of possession by a felon out. Yes. That's the only charge in this case. That's what he was convicted of in this case. The robbery is a separate case entirely. It is fully briefed and before this court, but it's its own separate case. So I'm focused just on the Moline address, just on the gun that was recovered. The robbery is not the focus of this. It's kind of what got the whole ball rolling down the hill, so it's important to understand where that came from. But my focus in this case is just on the gun and just on that search. But again, counsel's best weapon against these charges was to attack the search. Counsel did make an effort. Different counsel. Mr. Parker had a couple of public defenders in this case. His first public defender did make an attack, the same attack that I levied in my first argument about the sufficient nexus. But a second avenue of attack presented itself during trial, and counsel missed it. And the case law is relatively clear, although we are obviously deferential to trial strategy in such situations. When trial counsel forgoes the best avenue of attack, the presumption that trial counsel was acting reasonably is rebutted. And that's what we have here in this case. Counsel had tried to attack the search from the affidavit once, had failed. Another opportunity presented itself. Counsel didn't take it. That's unreasonable performance, and that's why counsel isn't effective. So on this particular issue, what Mr. Parker seeks is for this court to find that counsel isn't effective, that had he moved, as he should have, for a Franks hearing, he would have earned the evidentiary Franks hearing that he was deserved. And I want to just clarify this very quickly because it's a little confusing. The exact prayer for relief on this issue alone is remand for a complete Franks hearing. There are two sort of separate steps in any sort of Franks analysis. There's the initial substantive showing that the defendant has to make to earn the Franks hearing, and then at that evidentiary hearing when there will be evidence, the defendant can challenge the evidence, the state can present their own evidence, the defendant has to make the preponderance of the evidence that there was a material falsity inside of a warrant. I'm not saying that we've gotten to that point yet. I'm asking for a remand simply for that evidentiary hearing because Parker would have made that substantial showing had counsel not been ineffective, just to make sure that that's clear. So what you're saying that counsel missed is that the warrant was secured on essentially perjured testimony?  In the affidavit? Yes. That what Detective Bouchon averred to and swore to in the affidavit was not the entire truth and was not clear. The significance of that would be? Pardon me? The significance of that in terms of the granting of the warrant, the issuing of the warrant would be? Well, as I established, as I was talking about my first argument, there was very little probable cause pointing to this Moline address. There were these two things. If it turns out that one of those sources of information wasn't giving the exact address and that there was something else there, that basically halves the number of sources that pointed to probable cause. Again, I maintain it wasn't enough probable cause even as it was, but if you find that it was enough probable cause, then it was just enough probable cause. It was just barely past the line. But more importantly, Detective Bouchon's actions in this case deprived the magistrate of the ability to make the probable cause determination. In essence, it was alluded to at trial that Detective Bouchon concluded that this must have just been a mistake since the probation record came back to an invalid address. But when Detective Bouchon bridged that and made that conclusion, he usurped the role of the magistrate. The neutral, detached magistrate is the one that is supposed to look at the facts and make the conclusions. When Detective Bouchon made a conclusion and presented it as fact instead of the magistrate, the detective absolutely usurped the magistrate's role, and that's the key problem, and that's what counsel missed. Let's make it real simple. The affidavit, Detective, the affidavit is in error because of the probation record address? Yes. And because in the address, because in the affidavit, he said that the probation record came back to 15th Street. The probation record came back to 16th Street. That's the error. The other error, the explanation of how he determined on his own that it must have been some sort of mistake was never in the affidavit itself. Perhaps if he had included that in the affidavit and the magistrate had decided, well, I accept that conclusion, the magistrate makes that own conclusion, that's okay. In that case, it's not. He did have the utility record with the right address, did he not? He had the utility record to that address, the fact that it was to the 15th Street address. Correct, which is where they executed the search warrant. Yes. Okay. So what you're saying is that he testified that before he made the affidavit and signed it, he was aware that the probation record showed 16th Street, but he also had a utility record that showed it to be 15th Street. Am I correct? That's correct, yes. Okay. But in the affidavit, he did what in regard to that probation record? He averred what? He averred that it was at 15th Street, even though the record to him came back as 16th Street. So he made the correction, but it was a factual statement. No. And he omitted other facts as to what he was thinking about inside of that whole process. Does it matter what he was thinking? No. I'm asking that pointed question. Are you saying that the affidavit, sworn affidavit, was in error because of that conflict, regardless of what went into his mind, because he stated something that was not an accurate representation of the probation record? He knowingly stated something that was incorrect, that he knew was incorrect. I think that's what the question is. That is the question. And you're saying that, therefore, the warrant, the judge issuing the warrant, the warrant was based, issued on faulty affidavit, right? Yes. Even more egregious in your mind. Yes. That's the more egregious error in this case. But if we toss out the probation record, there still would be the address from the power company, right? We still have that coming back. So is there any prejudice then? I mean, if you're basing it, saying that the affidavit is no good because of the false statement, don't you look to see if the false statement is necessary to the finding? Absolutely. And to make that preliminary frame showing, you have to prove that if you took the alleged false statement out, if there was still probable cause, then obviously the false statement isn't that important and you fail at getting the frames here. That's the last one minute. In this case, and I'll wrap up very quickly here, in this case, though, I want to keep in mind that there were just how little probable cause established the tie to the Moline address to begin with, and the fact that we have conflicting information. Detective Bouchon, in the preliminary hearing, himself admitted, we didn't really know where he was because there was this conflicting information. So while if this had been, if you had removed the Rock Island stuff entirely, maybe the analysis changes and that one utility record is enough to save us from having to go to a frames hearing. That's not what we have here. We've got conflicting information. We have Mr. Parker in two different places, in two different addresses, with multiple things tying to him there. But the threadbare connection to that Moline address really falls apart when you take the probation record out and consider the only thing that was tying him there was the utility service when there were all sorts of other things tying him to the Rock Island address. And since if there are no more questions, this is a good stopping point, I'll resume the rest of my time. Thank you. Good. Afternoon, Mr. Ostall. You may proceed. May I please start? I'm Mark Ostall. I represent the state in this issue. The defendant had argued that the trial judge Erdin denying the defendant's motion to quash and suppress the search of the Moline residence. And the search warrant affidavit itself established a probable cause for the search of the Moline residence. The trial judge did not err in denying the motion to quash following hearing, and if the judge erred, the good faith exception applies in this case. The affidavit for search warrant provided a sufficient nexus between defendant, the armed robbery that was underlying this case, defendant's Moline residence, to support a practical common sense decision by the judge to issue a search warrant for defendant's Moline residence. The defendant was identified through fingerprints that were taken off a glass that he had used at the victim's house, and the victim identified defendant from a photo lineup. We mentioned Joshua Lewis. He retrieved a watch that was stolen during a robbery from a residence that was at 1120 19 1⁄2 Avenue in Rock Island. Well, that happens to be defendant's aunt's house. Joshua Lewis, how does he have a connection to this house? His girlfriend is the granddaughter of Pearlie Morrow, who owns the 19th Avenue house. So he does not have a direct relationship to her, but his girlfriend does. Apparently he knew the watch was in the house. How do we even get to him? There were videotapes from a pawn shop where he put the watch in, and that's how they identified him, and that's how we get him to the house where the police ask him about it. He says, I've got it here in the house, and so we get the 19th Avenue address. And so we have probable cause in the search warrant affidavit to search that particular house. When the police executed the warrant at the Rock Island house, they did find defendant in the basement and some of the other stolen goods, but simultaneously they were searching defendant's residence. So the fact that they found him in the basement does not necessarily support the search of his own residence at that time, because they're simultaneous. The defendant admitted that the warrant probably issued for the Rock Island residence, both below and on appeal. He acknowledges that the affidavit detailed the entire police investigation, and thus it was not, as he claimed in his brief, bare bones. The bare bones affidavit is one that states only suspicions, beliefs, conclusions, without providing some underlying factual substances regarding veracity, reliability, basis of knowledge. This affidavit was quite detailed. Now, Detective Buchan found that the pistols records management system listed defendant's known address as his aunt's address on 19th. He contacted Mid-America Energy Company and learned that service for defendant was actually at 1622 15th Street in Moline. Now, at the motion to quash hearing, defense counsel admitted that the electric bills were sent to defendant at the Moline residence. One issue that's contested here is that in the affidavit, Detective Buchan stated that he learned from federal probation that defendant lived on 15th Street. But at trial, you can testify that he believed U.S. federal probation had defendant's address listed at 1622 16th Street in Moline. And he learned from dispatch later that there was no such address on 16th. But one thing that he did testify to also at trial was that he had checked the lead system, and the lead system also had the 15th Avenue Moline address. He didn't put that detail into his affidavit, but it supports that the 15th Avenue was the correct address. And, of course, at trial, the people introduced into evidence the rental agreement showing that defendant lived on 15th, and the landlord testified the only defendant lived at that particular address. But isn't he going just after the propriety of the issuance of the warrant based upon the affidavit? Yes, yes. So what happened at trial, what is the relevance of that to focusing on the four corners of the warrant application? It verifies the 15th Avenue was the correct address. The Moline Avenue was correct. The 15th was correct. The only inaccuracy at all was the words federal probation, basically. If it's at the lead system, no problem. We wouldn't be standing here talking about this issue, probably. So the address is absolutely correct. And so the judge didn't issue an incorrect search warrant looking at the wrong address, in other words. So it actually ended up being the correct, the probable cause was correctly found, even though he listed the word federal probation provided in that. Even given the address being correct, if they just used the wrong agency for the basis, what's the nexus for the stolen goods? I mean, other than the fact that he is listed by one agency, law enforcement agency with the PISTOL database at Rock Island, and there's evidence of a watch there stolen, and he's actually physically present there, what is the connection to going to Moline? I mean, Rock Island is close to where the robbery occurred, too, right? Right. Not that either of them are that far. So what is the, other than he is associated with that address, what's the basis for the warrant? Okay. As I said, the defendant was positively identified as the person, and that robbery took place between about 10 minutes to 4 and 5 a.m. in the morning of the date in question. But the watch that was found in his aunt's house in Rock Island, that was 10 days after the crime. And that was the only thing that the officers knew of at that time that was at that address, just this one watch. There are multiple watches, jewelry, clothing, all kinds of items that were stolen during the robbery at the time. But what we do know is that the defendant actually lived at Moline and not Rock Island. And because only one stolen item had been located at the Rock Island address, the defendant himself was the nexus between the crime and his residence. Well, let's assume that there was no watch in Rock Island, but we have this identification of the defendant as the perpetrator of this robbery, correct? Yes. Okay. And is it normal then to seek a search warrant for the suspect's premises to recover goods? Normally, if you seek... Proceeds of the crime? Sure. If you have no other avenue to search, you know where he lives, you know he was the person that was positively identified at the crime. And if, under your hypothetical, no proceeds had yet been found, it would be natural to... Well, I'm just saying, move it all out. Just say, we've got a positive ID on a photo lineup of this individual. And in an investigation, they would find out where the individual lived and perhaps proceed with the issue to search warrant. Correct. Is there anything unusual about that? Not that I'm aware of. Okay. And we do want to note that in his brief, the defendant admitted that there was a legitimate question as to where the evidence of the robbery would be found. And Pettis, we mentioned in our brief, the witness said that a defendant had fired shots from a car and they gave a description of the car and the license plate number, but nobody gave the police an address. And the police found Pettis in the common area of his apartment complex with the keys to the particular car described. But Pettis did not have a gun on him. And the Pettis court found that there was probable cause to establish the search of his apartment where the trial judge reasonably inferred that the warrant affidavit that Pettis had fled the scene and hid the gun in his apartment. And they were making the connection that because the car was described in the license plate, that the shots were fired, that the gun had to be in the apartment. And they said that a probable cause was found in that particular situation. This court in Monzo said that although it may not be easy to determine when an affidavit demonstrates probable cause, doubtful or marginal cases are largely resolved by resorting to the preference of court of warrants. And the critical question, Monzo said, is whether the affidavit established a fair probability that evidence of the criminal activity would be found in Pettis' residence. And we believe it did. And we believe that the trial judge reasonably inferred that that defendant had likely hidden the proceeds of the robbery in his own residence and that he'd taken there very early in the morning, that he wouldn't have gone to his aunt's house. And if he did, it would all have been discovered earlier at the aunt's. So since we only had one thing there, the robbery occurred very early in the morning, it's logical to believe that there would be probable cause that he hid it in his own residence. In fact, did they find anything from the robbery there? They did not. Again, that was already 10 days after the crime when they first learned of where any of the proceeds were, and that set in motion getting the search warrants. So it was 11, I believe it might even have been 12 days after the crime that any search happened. Of course, he would have had plenty of time to dispose of many of the items, high-end watches and such, as he did for Joshua. He just sold it to him on the street, apparently. Did they find any of the proceeds anywhere? They did at the Rock Island address where more proceeds were there, yes. But that doesn't mean that when issuing the warrant that the judge had to know there were going to be proceeds there. He just had to have probable cause to believe there might be. Right. And we argue also that the good faith exception applies in this case. If the affidavit did not actually provide probable cause to search the Moline residence. The warrant was obtained from a detached, neutral judge. It was free from obvious defects and deliberate errors in the preparation. It did not contain a misrepresentation, a material misrepresentation by an agent of the state. No officer involved in preparing and executing the Moline residence search warrant believed it was invalid. In fact, there were three separate officers who conducted that search of Moline. Detective Buchan was not involved in that. So those officers would have reasonably believed and had good faith to believe that warrant was valid. People argued that in defense in the trial below. And the trial judge did not make a good faith ruling, but because he found probable cause to issue the warrant. In his main brief, although it was contested below, the defendant did not argue that the good faith exception did not apply. And people are going to stand on our argument from our brief that the defendant forfeited any argument in his reply brief that good faith does not apply. Because it was argued below, it would be reasonable to argue and appeal. Counsel also talked about ineffective assistance because Detective Buchan testified that the address was on 16th and not on 15th. The address, the affidavit rather said it was on 15th. But as we said earlier, Detective Buchan continued his investigation. He found that 15th Street was indeed the correct address. And the trial defendant's address was proven beyond a reasonable doubt to be 15th. So this court may consider that evidence to affirm the denial of the motion to quash and suppress. But the judge who was making the decision about whether the warrant should issue did not have all of the evidence before her with regard to making the probable cause decision. Is that correct? Only in the sense of federal probation. But the address is correct. So did the judge have the information that he had two conflicting addresses? No, no, Your Honor. That's accurate. So she did not have all of the relevant information when she was asked to make probable cause determination. That would be accurate. Yes. In fact, Detective Buchan had a solid, as I said at trial, he used the words he believed that he got 16th Street address from probation. So it wasn't a definitive answer on his part. And, of course, his further inquiry showed that he, in fact, didn't have the correct information that he thought he had. Your Honor, the people who sat in our briefing room are all of their argument as to who to affirm. Do you have any other questions of me? Well, then why isn't that fatal to the issuance of the warrant? Because the actual address was correct. At the end of the day, even though the argument is being made that the judge was misled by having the statement that the federal probation said it was 15th. If he had used anything else, you know, like pleads, as I mentioned earlier, it would have been totally accurate. We would have had the same result of a probable cause finding. So the only issue is those two words. You learned it from federal probation. The address was accurate. It proved at trial to be accurate beyond a reasonable doubt. So even if the warrant issued incorrectly because of the, as you point out, 16th Street was the conflicting address, it still ended up being correct. It was a harmless error. There was no prejudice to the defendant because the address was, in fact, correct. There was no harm to the defendant, did you say? I'm sorry? You said there was no harm to the defendant? I say there was no prejudice by this. Anyone who gets convicted is harmed in some way or another. I'm not going to, but what I'm saying is because the key is that the 15th Street addresses was accurate. I don't disagree with your premise that there was conflicting information that he did not put in there. He could have put additional information to support 15th Street, but he didn't put that in either. And the judge did not have all of the information to make a probable cause determination. That could be one view, yes, Your Honor. Why would that be an incorrect view? Simply because the address ultimately was correct. But we're talking about the warrant affidavit and the determination of whether there's probable cause. Yes, but there is case law that says that if you prove at trial beyond a reasonable doubt that the warrant affidavit was accurate in terms of its substance, that then there is no prejudice from that. The error in the affidavit is with regard to this particular property where the gun was found that he's being prosecuted for. So it's not just an ancillary error. It's a critically material error. The statement that he got the information from federal probation was not accurate. And again, it's not fatal because? Because ultimately that address was truly proven to be the defendant's address. Just the biggest thing that doesn't seem to be ancillary, like in some other cases that have said that it's an after-the-fact correction, there's no error. Well, there is case law that supports that. If you prove it at trial, then probable causes. But when we get to Frank's, for instance, a thing that was brought up, you have to do a preliminary assuring, a substantial preliminary assuring, that a false statement was knowingly, unintentionally, or with reckless disregard for the truth included in the warrant affidavit. And we don't have that here because the officer did his due diligence and did find it was the 15th Street address. Counsel's time. Thank you, Mr. Roscoe. Any other questions, Your Honor? No. Thank you. Mr. Posner. Counselor, the detective in this case very well may have done his due diligence, but he didn't do what he was supposed to do. And that was tell the magistrate who was responsible for issuing this warrant what that due diligence was. That's the big problem here. Counsel was very, very focused on the key fact that it doesn't really matter that this error was in the warrant, that this false statement was in the warrant because it turned out to be the right address. But that's not what the Constitution mandates. If the police officer, if the police violate the Constitution flagrantly, but they end up being right that there's a crime, we still hold that the Constitution will toss that search because we don't want to condone this sort of behavior from the police. Okay. And I agree with all of that. But if you get this, if it goes back and, you know, he testifies then that, well, yeah, the reason I know that this was wrong because dispatch said this, the wrong address doesn't exist. And we already had this bill from the power company, and it does exist, and we had something else. I mean, how do you get to the fact that the misrepresentation is fatal to the warrant? So, you know, if you go back and they're given the, like you said, he may have been, it may have been fine. He may have had the opportunity to explain that or say we have five other documents that show his address. And so if the judge at that point says, well, I would find that that's reasonable, that, you know, give us a reasonable explanation, isn't then a prejudice? I mean, doesn't that come into it then? I don't think the state can do what you're kind of suggesting that they can. If they can go back and kind of amend the affidavit and add to it. The affidavit is what it is. The only thing that can happen to the affidavit now is a false or misleading statement can be stricken from it. The false statement that we're talking about here has to be stricken from it. The state can't come in at the Franks hearing and say, oh, well, you had all this other information, didn't you? My response if I was the defense attorney would be like, okay, well, you didn't put any of that in this affidavit, did you? So I'm sorry, that ship has sailed well off into the sunset. You can't get on it. So what you're saying is if you've got a false misleading statement, then what was the false misleading statement? That the probation record came back to 15th Street when the probation record really came back to 16th Street. And so the only thing the state, the only thing they can do is say, okay, so we got you, take it out. Now does it establish sufficient probable cause after you've redacted it? Presuming that the rest, and this is the other important thing to keep in mind about a Franks hearing, is that now that one aspect of this warrant has been called into question, the purpose of the hearing is to flesh out whether or not there are any other issues or inaccuracies inside of this warrant. That's the other thing that kind of makes it hard to get to that final question now because we don't have a fully developed record. The evidentiary hearing's purpose is to fully develop this record so that we know exactly what in that affidavit is false and strike it and then look at what remains in the affidavit. Nothing else can be added to it. But if there are, we already now know that there is one statement that there is a substantial probability it was false. Are there other statements inside of there? Must those statements also be stricken? Will that change the probable cause equation as well? And that's the purpose of the entire hearing. But we're not going to add any more probable cause. Now, you've called this application for a warrant, haven't you? I have, yes. Okay. How long is it? It is, I believe, three pages, ten paragraphs in total. And you've only come up with this one? Only one that I can prove on the record because of the testimony. But again, that's the problem, is that I'm standing from a position where we didn't have a full Franks hearing. If there had been a full suppression motion, I would hope that defense counsel would get in there, ask a lot of questions about everything, test the veracity of all of the statements of the entire investigation, and see what else fell from the tree, in essence. We haven't shaken the tree yet. We just know that there's some rotten fruit on it that we need to go back and examine. Counsel, it's one minute. Unless there are any other questions, I think I've hit the – I will say one last thing about the good faith exception, very briefly. The good faith exception doesn't apply in this case because of the material misrepresentation by an agent of the State. I think that's plainly clear. The State does argue a forfeiture. I addressed that in my brief. I won't address that any further unless there are questions. And if there are no more questions, Mr. Parker asks that you vacate his conviction or, in the alternative, remand us for further proceedings in the circuit court. And thank you. Thank you, Mr. Pilsner. Thank you both for your arguments here today. As earlier stated, we will take this case under advisement and we will issue a written decision to you as soon as possible.